<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **JULIUS REALTY CORPORATION**, a New Jersey corporation, *et al.*, | |
| Plaintiffs, | Civil Action No. 20-04575 (ZNQ) (LHG) |
| v. | **OPINION** |
| **DAWN E. THOMPSON**, an individual, | |
| Defendant. | |

<u>**QURAISHI, District Judge**</u>

      **THIS MATTER** comes before the Court upon a Motion to Dismiss the Second Amended

Complaint and a Motion to Appoint a Receiver or Fiscal Agent under Federal Rule of Civil

Procedure 66.  The Court has carefully considered the parties' submissions and decided the Motion

without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.[1]

For the reasons set forth below, the Court will **GRANT** the Motion to Dismiss and **GRANT** the

Motion to Appoint a Receiver or Fiscal Agent.

---

[1] For the sake of brevity, all references herein to "Rule" will be to the Federal Rules of Civil Procedure.

I.      BACKGROUND AND PROCEDURAL HISTORY

For the purposes of the motion to dismiss (the "Motion to Dismiss," ECF No. 92), the factual allegations in the Amended Complaint ("Am. Compl.," ECF No. 69) are accepted as true. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citation omitted).  "[D]ocuments integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal citation, quotation marks, and alteration omitted).  "[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *In re Donald J. Trump Casino Sec. Litig.-Taj Mahal Litig.*, 7 F.3d 357, 368 n.9 (3d Cir. 1993) (citation omitted).

The matter arises out of the alleged mismanagement of Plaintiff Julius Realty Corp. ("Julius Realty"), a New Jersey corporation whose sole business consists of owning and leasing a property in Lawrence Township (the "Litho Property").  (Am. Compl. ¶¶ 1, 2.)  Plaintiff U.S. Eagle Corporation ("U.S. Eagle") is a Delaware corporation whose sole business consists of managing its wholly owned subsidiary, Julius Realty.  (*Id*. ¶ 3.)  Plaintiff James J. Westphal, Jr. ("Jim") is a Nevada resident and an officer and director of Julius Realty and U.S. Eagle.  (*Id*. ¶ 5.)  Jim is the trustee of Plaintiff JJW Trust ("Jim Trust"), which owns 35.7% of U.S. Eagle common stock.  (*Id*. ¶ 8.)  Plaintiff Scott K. Westphal ("Scott") is a Massachusetts resident and director of Julius Realty and U.S. Eagle.  (*Id*. ¶ 6.)  Scott is the trustee of Plaintiff SKW Trust ("Scott Trust"), which owns 19.7% of U.S. Eagle common stock.  Scott was appointed the proxy for the other shareholders of U.S. Eagle who represent approximately 23.19% of U.S. Eagle common stock.  (*Id*. ¶ 14.)  The

Jim Trust, Scott Trust, and Scott as proxy represent approximately 78.59% of the U.S. Eagle

common stock.

Defendant Dawn E. Thompson resides in California and is, upon information and belief of

Plaintiffs, the trustee of non-party Dawn E. Westphal Trust ("Dawn Trust"), which represents the

rest of the U.S. Eagle common stock.  (*Id*. ¶ 10.)  Defendant, Jim, and Scott are siblings.  (*Id*. ¶ 15.)

Non-party Philip Thompson ("Philip") is the former husband of Dawn and was formerly involved

with actions taken by U.S. Eagle and contested by Plaintiffs.  (*Id*. ¶¶ 16, 23.)

Defendant joined the "family business" in or about June 21, 2005 as the Secretary of U.S.

Eagle.  (*Id*. ¶ 18.)  When requested by U.S. Eagle or its stockholders to distribute profits of Julius

Realty to U.S. Eagle, Dawn refused and blocked all such efforts.   (*Id*. ¶ 21.)  On or about August

16, 2010, Scott was informed via letter signed by Defendant as Secretary of U.S. Eagle that the

entire Board of Directors of U.S. Eagle had been removed and replaced with new directors Dawn,

Philip, and a third individual named Todd Bearup.  (*Id*. ¶ 23.)  Such action was allegedly taken in

violation of U.S. Eagle's By-laws, in part because Jim, the Jim Trust, and the Scott Trust did not

vote for Scott's removal from the Board of Directors of U.S. Eagle.  (*Id*. ¶¶ 23, 24.)  Later,

Defendant, in her capacity as Secretary of U.S. Eagle, sent a letter to Scott informing him that his

employment by U.S. Eagle was terminated, effective August 19, 2010.  (*Id*. ¶ 25.)

Shortly after Scott's removal and termination, U.S. Eagle and its group of subsidiaries,

including Julius Realty, entered into bankruptcy proceedings (the "Bankruptcy"), with Dawn

primarily controlling the Bankruptcy proceedings on behalf of U.S. Eagle and Julius.  (*Id*. ¶ 26.)

Julius Realty disposed of all but three properties after the chief restructuring officer engaged by

the group of entities marketed and posted them for sale.  (*Id*. ¶ 28.)  Two of the remaining three

were sold soon after the Bankruptcy reorganization.  (*Id*.)

As U.S. Eagle and Julius Realty exited Bankruptcy, Defendant allegedly caused Julius Realty to enter an "employment and severance agreement" (the "Employment Agreement"). (*Id*. ¶ 33.) Defendant allegedly offered her then-husband, Philip, a generous divorce settlement as he reviewed and approved the Employment Agreement on behalf of U.S. Eagle and Julius Realty. (*Id*. ¶ 34.) The final draft of the Employment Agreement was not provided to the then-current members of the Board of Directors of Julius Realty or explained to the directors and stockholders of U.S. Eagle, Julius Realty's sole shareholder. (*Id*. ¶ 36.)

Under the Employment Agreement, Defendant received: an annual base salary of $210,496.00, a luxury vehicle (an Aston Martin) for her use, nineteen weeks of paid vacation, attorney fees related to the negotiation of the Employment Agreement, and other benefits and bonuses. (*Id*. ¶¶ 38, 41, 46–48.) Defendant would also receive a $1.3 million severance payment in the event her employment is terminated without cause. (*Id*. ¶ 41.) The Employment Agreement required Julius Realty to transfer title of a company-owned vehicle to Defendant. (*Id*. ¶ 45.)

Defendant allegedly engaged in a consistent pattern of corporate misdeeds, mismanagement, and theft of Julius Realty assets between 2014 and 2019. (*Id*. ¶ 50.) Plaintiff alleges that: payments to Defendant were improper or not business expenses (*Id*. ¶¶ 51–55); Defendant failed to prepare minutes, hold annual meetings, or perform other directorial duties (*Id*. ¶¶ 58–73, 76); and Defendant improperly loaned money to herself and Margaret H. Westphal ("Margaret"). (*Id*. ¶¶ 74, 75).

On March 27, 2020, Jim Trust and Scott Trust, as majority stockholders of U.S. Eagle, notified Defendant that an annual stockholders' meeting would occur on April 6, 2020. (*Id*. ¶ 79.) At the meeting, Defendant departed after objecting. (*Id*. ¶ 82.) The remaining stockholders voted to remove the then-current directors of U.S. Eagle and to elect Scott and Jim to be the directors of

4

U.S. Eagle effective immediately.  (*Id*. ¶ 82.)  Scott and Jim, now the directors of U.S. Eagle, acted

by written consent to remove all then-current officers of U.S. Eagle and to appoint Scott and Jim

as officers[2].  (*Id*. ¶ 83.)

Between March 27, 2020 and April 6, 2020, Defendant paid herself through loans made to

herself and Margaret H. Westphal, and retainer fees to her attorneys, allegedly to embezzle about

$2.7 million from Julius Realty.  (*Id*. ¶ 86.)  A written consent dated April 2, 2020 authorized

Defendant to perform these transactions, but allegedly was not executed until after Defendant was

terminated from Julius Realty on April 6, 2020.  (*Id*. ¶¶ 87–90.)

On August 25, 2020, Scott and Jim filed an action in Delaware Chancery Court to

determine the composition of U.S. Eagle's Board of Directors.  (*Id*. ¶ 96.)  On October 16, 2020,

the Delaware Chancery Court signed and entered a Stipulation and Order of Voluntary Dismissal

(the "Delaware Stipulation").  (*Id*. ¶ 97.)  Pursuant to the Delaware Stipulation, Scott, Jim, and

Defendant stipulated that the U.S. Eagle board of directors was comprised of Scott, Jim, and

Defendant on August 21, 2020.  (*Id*. ¶ 98.)  On October 27, 2020, the stockholders of U.S. Eagle

(except Defendant) acted by written consent to remove Defendant from U.S. Eagle's Board of

Directors and to confirm Scott's and Jim's positions on the board, without prejudice to their

position that she had already been validly removed months prior.  (*Id*. ¶ 99.)  Through a number

of other written consents, Scott and Jim removed Defendant from all positions with U.S. Eagle

and Julius Realty.  (*Id*. ¶¶ 100–102.)

Defendant filed a motion to dismiss (the "Motion," ECF No. 92), a brief supporting her

Motion (the "Motion Br.," ECF No. 93), a motion to appoint a receiver or a fiscal agent (the

"Receiver Motion," ECF No. 82), and a brief in support of the Receiver Motion (the "Receiver

---

[2] The new U.S. Eagle Board of Directors appointed Scott as President and Secretary and Jim as Chairperson of the Board and Treasurer.  (*Id*. ¶ 84.)

Motion Br.," ECF No. 82-3).  Plaintiffs filed an opposition brief to the Motion ("Opp'n Br.," ECF No. 97) and the Receiver Motion ("Receiver Opp'n Br.," ECF No. 88).

Plaintiffs assert seven counts against Defendant.  Plaintiffs' first count requests this Court to declare that the Employment Agreement is an *ultra vires* agreement.  (Am. Compl. ¶¶ 103–107.)  Plaintiffs' second count alleges a breach of Defendant's duty of care, duty of loyalty, duty of disclosure, and duty of good faith.  (*Id.* at ¶¶ 108–112.)  Plaintiffs' third count alleges that Defendant converted Julius Realty's cash, property, and an Aston Martin DB9.  (*Id.* ¶¶ 114–118.)  Plaintiffs' fourth count alleges that Defendant was unjustly enriched by virtue of her conduct.  (*Id.* ¶ 120.)  Plaintiffs' fifth count alleges a breach of the Covenant of Good Faith and Fair Dealing.  (*Id.* ¶¶ 122 – 126.)  Plaintiffs' sixth count alleges tortious interference with Julius Realty's and U.S. Eagle's business opportunities and management of its affairs.  (*Id.* ¶¶ 127 – 132.)  Plaintiffs' seventh and final count alleges a breach of contracts for certain employee loans.  (*Id.* ¶¶ 133 – 140.)

## II.   LEGAL STANDARD

### A.  Motion to Dismiss

Under Rule 12(b)(1), a court may dismiss a claim if it lacks subject-matter jurisdiction. *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007).  A Rule 12(b)(1) motion can raise a facial attack or a factual attack, which determines the standard of review.  *Constitution Party of Pennsylvania v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014).  A facial attack "is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court because, for example, it does not present a question of federal question . . . . or because some other jurisdictional defect is present." *Constitution Party*, 757 F.3d at 357.  In

reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto in the light most favorable to the plaintiff." *Id*. at 358. "A factual attack concerns the actual failure of [plaintiff's] claims to comport with the jurisdictional prerequisites." *CAN v. United States*, 535 F.3d 132, 139 (3d Cir. 2008); *see id.* ("So, for example, while diversity of citizenship might have been adequately pleaded by the plaintiff, the defendant can submit proof that, in fact, diversity is lacking.") When considering a factual challenge, "the plaintiff [has] the burden of proof that jurisdiction does in fact exist," the court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case," and "no presumptive truthfulness attaches to [the] plaintiff's allegations . . . ." *Mortenson v. Fest Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

Under a Rule 12(b)(6) challenge, courts accept the Plaintiffs' well-pleaded factual allegations as true and draw all reasonable inferences from those allegations in the Plaintiffs' favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of [standing], supported by mere conclusionary statements, do not suffice." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter" to show that Plaintiffs established standing and state a claim. *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see In re Horizon Healthcare Servs. Inc. Data Breach Litigation*, 846 F.3d 625, 633 (3d Cir. 2017).

### B. Motion to Appoint a Receiver or Fiscal Agent

In the spirit of providing "clearly necessary oversight in a manner which is no more intrusive than necessary," a court may appoint a receiver pendente lite or a special fiscal agent under Rule 66. *Leone Industries v. Associated Packaging, Inc.*, 795 F.Supp. 117, 120–21 (D.N.J. 1992); *see also Tanzer v. Huffines*, 408 F.2d 42 (3d Cir. 1969). Motions to Appoint a Receiver are interim equitable relief, akin to a motion for preliminary injunction. *See Fimbel v. Fimbel*

*Door Corp.*, 2016 WL 1379788, at \*2 (D.N.J. Apr. 7, 2016).  "Temporary injunctions are customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial or at summary judgment, because there is no rule in the preliminary injunction context akin to the strict rules governing the form of affidavits that may be considered in summary judgment proceedings." *Arrowpoint Capital Corp. v. Arrowpoint Asset Mgmt., LLC*, 793 F.3d 313, 325 (3d Cir. 2015) (quotations and citation omitted).

## III.   DISCUSSION

Defendant argues that Plaintiffs U.S. Eagle, Jim, Jim Trust, Scott, and Scott Trust lack standing because they do not allege an injury-in-fact.  (Motion Br. at 5–8.) Alternatively, Defendant moves for dismissal under 12(b)(6) for Plaintiff's failure to state claims against Defendant. (*Id.* at 9–24).  The Court will consider the Defendant's threshold standing arguments before moving to the Rule 12(b)(6) arguments.  Federal courts hearing a case under the federal declaratory judgment statute, 28 U.S.C. § 2201, and sitting in diversity should apply substantive state law.  *Liberty Mutual Insurance Co. v. Sweeney*, 216 F.2d 209 (3d Cir. 1954).

### A. Motion to Dismiss

#### i.   Rule 12(b)(1)

Motions to dismiss for lack of standing are governed by Rule 12(b)(1). *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007).  For courts to hear a "case or controversy," plaintiffs must prove the irreducible constitutional minimum of standing; (1) an "injury-in-fact" or an "invasion of a legally protected interest which is (a) concrete an particularized and (b) "actual or imminent, not conjectural or hypothetical;" (2) the injury is "fairly . . . traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court;" and (3) "it must be likely, as opposed to merely speculative, that the injury will be

redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)

(internal citations omitted).  On a motion to dismiss, courts "presume that general allegations [of

standing] embrace those specific facts that are necessary to support the claim." *Id* at 561.

Given that Defendant asserts lack of standing while considering the claims on their face

(Motion Br. at 2–4), the Court construes Defendant's Rule 12(b)(1) argument as a facial attack.

Thus, the Court applies the same standing as a motion under Rule 12(b)(6).  *Willekes v. Serengeti

Trading Co.*, 783 Fed. App'x 179, 183 (3d Cir. 2019); *Constitution Party*, 757 F.3d at 357.  In

shareholder suits, the prohibition of asserting the legal rights or interests of third parties "precludes

shareholders from initiating actions to enforce the rights of the corporation." *Willekes*, 783 Fed.

App'x at 183.  Thus, "a shareholder (even a shareholder in a closely-held corporation) may not sue

for personal injuries that result directly from injuries to the corporation." *Id.*  A shareholder may

have special injury standing "to recover for injuries that were inflicted on him individually rather

than on the corporation." *Id.*

Defendant argues that the Individual Plaintiffs (Jim and Scott), the Shareholder Plaintiffs

(Jim Trust and Scott Trust), and U.S. Eagle fail to allege an injury that Defendant caused directly

to them. (Motion Br. at 2.)  Instead, Defendant argues that they allege injuries Defendant caused

Julius Realty through her alleged mismanagement and misappropriation of Julius Realty's funds,

which does not suffice as an injury traceable to the Individual Plaintiffs, Shareholder Plaintiffs,

and U.S. Eagle. (*Id.*)  In response, Plaintiffs points to allegations in the Amended Complaint that

allegedly show Defendant harming the Individual Plaintiffs, Shareholder Plaintiffs, and U.S.

Eagle: Scott's removal from the U.S. Eagle Board of Directors without the necessary number of

votes; Scott's termination from his position with U.S. Eagle and return of a company vehicle;

Defendant's refusal and blockade of dividend distributions from Julius Realty to U.S. Eagle; and

Scott's and Jim's exclusion from all bankruptcy-related activities and decision-making for U.S. Eagle and Julius Realty.  (Opp'n Br. at 18–19.)

The Court notes that the Individual Plaintiffs, suing in their individual capacities, are akin to fourth parties given the corporate structure of Julius Realty; Shareholder Plaintiffs are similarly akin to third parties.[3]  Furthermore, Plaintiffs point to injuries that derive from actions taken primarily through U.S. Eagle; these injuries are not traceable to the alleged mismanagement of Julius Realty and misappropriation of its assets.  Thus, the Court holds that the Individual Plaintiffs and Shareholder Plaintiffs do not have standing to litigate the claims in the Amended Complaint because they do not allege "injuries that were inflicted on [them] individually rather than on [Julius Realty]." *Willekes*, 783 Fed. App'x at 183; *see also Strassenburg v. Straubmuller*, 146 N.J. 527, 550 (N.J. 1996) ("New Jersey accepts the general principle [that] Shareholders cannot sue for injuries arising from the diminution in value of their shareholdings resulting from wrongs allegedly done to their corporations.") (internal citations omitted).  Under the rationale of *Willekes*, U.S. Eagle has derivative standing to litigate the failure to distribute dividends from Julius Realty to U.S Eagle.  783 Fed. App'x at 183.  However, if U.S. Eagle is suing derivatively, it has not shown that it has comported with the requirements of N.J.S.A. § 14A:3-6.3.  Thus, U.S. Eagle has not pled standing sufficient to establish jurisdiction.

ii.    Rule 12(b)(6)

Given that the Court has found that the Individual Plaintiffs, Shareholder Plaintiffs, and U.S Eagle do not have standing to litigate the claims, the Court will consider the claims asserted by Julius Realty against Defendant.  As a reminder, federal courts sitting in diversity apply federal

---

[3] Individual Plaintiffs hold shares of Shareholder Plaintiffs.  (Am. Compl. ¶¶ 8–9.)  Shareholder Plaintiffs hold shares of U.S. Eagle (*Id*. ¶¶ 8–9), which is the sole shareholder of Julius Realty (*Id*. ¶ 4.)

procedural law and state substantive law under the *Erie* Doctrine. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938).

Julius Realty's first count requests the Court to declare the Employment Agreement signed in 2014 to be an *ultra vires* act and thus *void ab initio*. (Am. Compl. ¶¶ 103–107.) Defendant argues that Plaintiffs' request for declaratory relief improperly asks the Court to undo past events and is not permitted by New Jersey law. (Motion Br. at 4.) Julius Realty counters that they seek declaratory judgment with respect to Defendant's embezzlement from Julius Realty's corporate bank account. (Opp'n Br. at 6.) Julius Realty points to approximately $2.7 million paid by Dawn to Offit Kurman, P.A. (Julius Realty's former legal counsel) or herself between April 2 and April 3, 2020 under a purportedly "sham written consent." (*Id.* at 7–8.) The Court notes that Offit Kurman initiated an interpleader action to deposit the funds, which is still pending before this Court. *See Offit Kurman, P.A. v. Julius Realty, et al.*, Civ. No. 20-17262 (D.N.J. Dec. 4, 2020).

New Jersey permits an *ultra vires* action to proceed by the corporation against a former officer of the corporation. N.J. Stat. § 14A:3-2. However, as Defendant points out, the *ultra vires* doctrine may not be used as the basis for a suit of rescission, which Julius Realty does not respond to. *See* Comm'rs Cmt. To N.J. Stat. Ann. § 14A:3-2. Regardless, Julius Realty did not attach its articles of incorporation to its Amended Complaint, nor did it explain how the Employment Agreement was an *ultra vires* act in the context of its articles of incorporation. Thus, Julius Realty fails to allege a viable *ultra vires* action.

Julius Realty's second count alleges a breach of Defendant's duty of care, duty of loyalty, duty of disclosure, and duty of good faith. (Am. Compl. at ¶¶ 108–112.) Breaches of fiduciary duties can only be brought by shareholders as derivative actions in New Jersey. *See Tully v. Mirs*, 198 A.3d 295, 302 (N.J. App. Div. 2018). Given that Julius Realty is the only plaintiff with

standing and is the corporation rather than a shareholder, the Court finds that it has failed to allege a plausible claim. *Cf. Furst v. Feinberg*, 54 Fed. App'x 94, 99 (3d Cir. 2002) (Delaware law prohibits direct suits of breach of fiduciary duty).

Julius Realty's third count alleges that Defendant converted Julius Realty's cash, property, and an Aston Martin DB9, while Julius Realty's fourth count alleges that Defendant was unjustly enriched by virtue of her conduct. (Am. Compl. ¶¶ 114–118, 120.) The elements of conversion under New Jersey common law are: "(1) a benefit is conferred upon the defendant; (2) at the plaintiff's expense; (3) under circumstances that would make the defendant's retention unjust." *Sharma v. Gupta*, Civ. No. 20-3446, 2022 WL 970544, at \*5 (D.N.J. Mar. 31, 2022) (quoting *Powers v. Lycoming Engines*, 245 F.R.D. 226, 230 – 31 (E.D. Pa. 2007)). However, New Jersey courts have held that conversion is generally captured by the breach of fiduciary duty claim unless the injury to shares is distinct. *Tully*, 198 A.3d at 126–27 (quoting *Strasenburgh v. Straubmuller*, 683 A.2d 818, 830 (N.J. 1996)). Given that unjust enrichment cannot lie as an independent claim as well, the Court dismisses Julius Realty's third and fourth count. *Sharma*, 2022 WL 97044, at \*7.

Julius Realty's fifth count alleges a breach of the Covenant of Good Faith and Fair Dealing. (Am. Compl. ¶¶ 122 – 126.) "Although the implied covenant of good faith and fair dealing cannot override an express term in a contract, a party's performance under a contract may breach that implied covenant even though that performance does not violate a pertinent express term." *Wilson v. Amerada Hess Corp.*, 773 A.2d 1121, 1126 (N.J. 2001). Generally, it has been applied by New Jersey courts in three ways: (1) it permits the inclusion of terms and conditions which have not been expressly set forth in the written contract; (2) it allows redress for the bad faith performance of an agreement even when the defendant has not breached any express term; and (3) it permits

inquiry into a party's exercise of discretion expressly granted by a contract's terms. *Seidenberg v. Summit Bank*, 791 A.2d 1068, 1076 (App.Div.2002) (citations omitted). However, Julius Realty does not provide in the Amended Complaint which contract the covenant attached to or a copy of the contract. As such, Julius Realty fails to allege a viable claim of a breach of the Covenant of Good Faith and Fair Dealing.

Julius Realty's sixth count alleges tortious interference with Julius Realty's and U.S. Eagle's business opportunities and management of its affairs. (Am. Compl. ¶¶ 127 – 132.) To prove tortious interference with prospective economic advantage, a plaintiff "must show that it had a reasonable expectation of economic advantage that was lost as a direct result of defendants' malicious interference, and that it suffered losses thereby. *Lamorte Burns & Co., Inc. v. Walters*, 770 A.2d 1158 (N.J. 2001). Given that Julius Realty does not provide an example of a loss of a reasonably expected economic advantage, Julius Realty fails to plead Defendant's tortious interference with its business opportunities. *Twilo, LLC v. Patrinos, Inc.*, 2006 WL 2632762, at *3 (N.J. Super. Ct. 2006). Additionally, Julius Realty did not direct the Court to a New Jersey cause of action for tortious interference with a corporation's management of its affairs. Given that Julius Realty has not provided an example of tortious interference with business opportunities, the Court finds that Julius Realty has failed to plead a viable claim for its sixth count.

Julius Realty's seventh and final count alleges a breach of contracts for certain employee loans. (Am. Compl. ¶¶ 133 – 140.) Julius Realty argues that the loans are covered by the conversion claim or, alternatively, should be deemed demand loans and are due now. Assuming, *arguendo*, the loans are covered by the conversion claim, then the Court will dismiss this count because it is not a separate recoverable claim. If the loans are not covered by the conversion claim,

13

then Julius Realty does not provide legal basis or support for its alternate legal theory and thus fails to plead a claim.  (Opp'n Br. at 17.)  Thus, the Court will dismiss the seventh count.

### B.  Motion to Appoint a Receiver or Fiscal Agent

The appointment of a temporary receiver under Rule 66 is an extraordinary form of relief and should be granted only "in the face of compelling circumstances and in the absence of a less dramatic remedy." *Leone*, 795 F.Supp. at 120 (citing Bracco v. Lackner, 462 F. Supp. 436 (N.D. Cal. 1978)). "Because a receiver unquestionably interfere[s] with an individual's right to otherwise control his or her property ... a district court should appoint a receiver only in cases of necessity, and when the plaintiff clearly and satisfactorily shows that an emergency exists and the receiver is needed to protect the property interests of the plaintiff." *Minuteman*, 999 F. Supp. 2d at 816 (quotations and citations omitted).

Courts in the District of New Jersey uniformly require a party seeking receivership to demonstrate: (1) that she has "an equitable interest in the property to be seized or . . . judgments . . . cannot otherwise be satisfied," (2) that there is an "imminent danger of [the] property being lost, injured, diminished in value or squandered," and (3) "[that other] legal remedies are inadequate." *Stonebridge Bank*, 2011 WL 2173771, at *1 (quoting *Leone*, 795 F. Supp. at 120). Special fiscal agents are appropriate where close supervision, but not control, is necessary. *Leone*, 795 F. Supp. at 121 (quoting *Republic of Philippines v. New York Land Co.*, 852 F.2d 33 (2d Cir. 1988)); *see also Fimbel v. Fimbel Door Corporation*, 2016 WL 1379788, *7 (D.N.J. Apr. 7, 2016) ("Since FDC is a small, closely held company, any change in management [due to an appointment of a receiver] will result in a loss of institutional knowledge, and may prevent the company from conducting business as usual").

14

Defendant has an equitable interest in the Litho Property because she owns shares in U.S. Eagle, the sole owner of Julius Realty and thus the Litho Property. (Am. Compl. ¶¶ 1–3.) Given both parties' concerns about cash outflows from Julius Realty ("Thompson Decl.," ECF No. 82-1, ¶¶ 17, 18, 20, 21, 24, 25; "Scott Decl.," ECF No. 90-1, ¶¶ 31, 38, 41, 42, 54) and Julius Realty's and U.S. Eagle's history of bankruptcy, the Court finds that there is an imminent danger of Julius Realty's property being diminished in value or squandered.[4] *See also McDermott v. Russell*, 523 F. Supp. 347, 352 (E.D. Pa. 1981) (imminent danger when movant states sufficient facts that company is suffering financial loss because of non-moving party's embezzlement and conversion of corporate assets). The Court further finds that Defendant has demonstrated that other legal remedies are inadequate because both parties allege several concerns that would not be adequately remedied by other legal remedies.[5] However, the Court believes sufficient evidence to appoint a fiscal agent exists because close supervision, but not control, seems appropriate here. As such, Defendant's Motion to Appoint a Receiver or Fiscal Agent is granted.

## IV.    CONCLUSION

For the reasons stated above, the Court will the Court will **GRANT** the Motion to Dismiss and **GRANT** the Motion to Appoint a Receiver or Fiscal Agent. The Amended Complaint will be

---

[4] Plaintiffs argue that a receiver or fiscal agent are appointed only when the facts demonstrate significant criminal and financial malfeasance. *See, e.g., Leone*, 795 F. Supp. at 120 – 121 (defendant has a history of criminal RICO); *Fimbel v. Fimbel Door Corp.*, Civ. No. 14-1915, 2016 WL 1379788, at *4 (D.N.J. Apr. 7, 2016) (habit of making unsecured loans and failure to formalize transfers warranted appointment of fiscal agent); *United States v. Local 30, United Slate, Tile & Composition Roofers*, 686 F. Supp. 1139, 1169 (E.D.Pa.1988), *aff'd*, 871 F.2d 401 (3d Cir.1989), *cert. denied*, 493 U.S. 953 (1989) (appointing court liaison officer to oversee a corrupt union). In the context of a corporation, the Court finds that *Fimbel* is the only relevant case here. There, the failure to respond to discovery requests and the defendants' failure to explain potential squandering of property did not assuage the court's concerns. *Id.* at *4–5. Thus, the court found it prudent to assign a special fiscal agent. *Id.* at *5. Here, Plaintiffs fail to meaningfully respond to Defendant's statements in her affidavit, allege that she lied in a sworn affidavit, and re-allege their Amended Complaint without providing evidence that they may be engaging in the activities Defendant warns the Court about.

[5] In particular, the Court notes the failure to maintain original records during the course of litigation (Thompson Dec. ¶ 26; Scott Decl. ¶¶ 36–38) and the failure to distribute corporate dividends to Defendant (Scott Decl. ¶ 42).

dismissed without prejudice.  Plaintiffs may request leave from this Court to file a new complaint.

An appropriate Order will follow.


Date: **July 28, 2022**

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**
